## A. L. BOYD v. THE WHITE COMPANY.

Eastern Section.    July 3, 1926.

No petition for Certiorari was filed.

1. **Sales.**    Property must be repossessed because of the consideration remaining unpaid at maturity, before statute requiring property to be advertised for sale within ten days applies.

In an action to recover in a plea of debt because of the breach of a conditional sales contract for failing to advertise the property repossessed where the evidence showed that the purchaser had abandoned the property and fled and his whereabouts were unknown and the seller took possession of the property to preserve it and that as soon as the buyer returned and advised the seller that he did not intend to make further payments, the property was advertised, held that before the seller would be required to advertise the property within ten days he must have repossessed it because of the consideration remaining unpaid at maturity and repossessing it for the purpose of preserving it did not bring the seller under the statute.

Appeal from Circuit Court of Knox County; Hon. A. C. Grimm, Judge.

Affirmed.

Bern J. Henry, of Knoxville, for plaintiff in error.

T. G. McConnell and W. Cecil Anderson, of Knoxville, for defendant in error.

THOMPSON, J.    Mr. A. L. Boyd, doing business under the name and style of Ever Ready Garage, brought this suit against The White Company, a corporation, before a Justice of the Peace seeking to recover "in a plea of debt due by breach of conditional sale contract in failing to advertise a White truck repossessed on February 11, 1925." The Justice of the Peace rendered judgment in favor of the plaintiff for $317 and costs.    The defendant appealed to the circuit court where the case was tried by the Circuit Judge without the intervention of a jury.    The Circuit Judge rendered judgment dismissing plaintiff's case at his cost and the plaintiff, his motion for a new trial having been overruled, has appealed to this court and assigned error.

In passing upon the case the Circuit Judge stated:

"This court finds that The White Truck Company sold this truck to A. L. Boyd and W. D. Bolinger on the 2nd day of November, 1924; that it retained the title to said truck to secure the payment of the deferred purchase money; that the defendants defaulted in the payment of the monthly installments and that the defendant Bolinger sold his interest in the business to the defendant Boyd. That after said Bolinger had disposed of his interest to the plaintiff Boyd,

the plaintiff Boyd suddenly and mysteriously disappeared. That The White Company for the purpose of safeguarding its security and for no other purpose, took possession of said truck, intending to preserve it until the plaintiff Boyd returned. The plaintiff Boyd did return but he did not indicate until March 2, 1925, that he would not proceed with the transaction and thereupon and within ten days after being so notified The White Company did advertise and sell said truck as required by the conditional sales contract law, and it is not liable to the plaintiff in this case. The result is that this suit will be dismissed at the plaintiff's cost.''

The assignment of errors in this court is as follows:

''1. There is no evidence to sustain the judgment of the Honorable circuit court of Knox county in this case.

''2. The said court erred in finding from the proof that the defendant in this case could, without the consent or by agreement of the plaintiff, take back the property and hold the same in its custody for the purpose of safeguarding its security, without advertising the said property for sale in the manner prescribed by law, within ten days after actually regaining possession.

''3. The said court erred in finding that the failure of the plaintiff Boyd to indicate until March 2, 1925, that he would not proceed with the transaction, excused the defendant from advertising and selling said property within ten days after regaining possession of the property in the manner prescribed by law.''

The facts as disclosed by the record are as follows:

Boyd and Bolinger ran a garage and had several mechanics in their employ. The truck which they desired to purchase from The White Company was in very bad condition and, in fact, was not entirely assembled. It needed new tires and a number of new parts, and had to be partly rebuilt or reassembled. Boyd and Bolinger purchased that part of the truck which was assembled and the tires and parts from The White Company for the sum of $663.50. They paid $15 cash when they signed the contract, and $75 more when the truck was delivered to them a day or two later. They signed twelve equal notes, one due each month, for the balance. These notes contained the usual title retention provision.

Upon receiving the truck Boyd and Bolinger, with the aid of their mechanics and at their spare time, began installing the new parts and reassembling and rebuilding it, but they seem to have progressed very slowly.

When the first note fell due on December 7, 1924, it was not paid; and neither were the next two which fell due on January 7, 1925, and February 7, 1925, although The White Company sent a representative to the garage and tried to make collection.

In December, 1924, or January, 1925, Bolinger sold his half interest in the garage and truck to Boyd. He then went to work for a concern next door to the garage.

On February 7, 1925, Boyd, while driving a car belonging to one of his friends, and while in company with some young lady, ran into a freight train and tore up the car. Both he and the young lady were badly hurt, his shoulder being broken. A warrant was issued for his arrest charging him with abduction and kidnapping. He went to Chattanooga on February 9, 1925, without letting it be known where he had gone, and returned to Knoxville on February 11, 1925, and submitted to the charges against him. Before he left Knoxville to go to Chattanooga he asked Bolinger to look after the garage for him, which Bolinger agreed to do and did do. Boyd says he went to Chattanooga for the purpose of receiving treatment for his injuries (as Chattanooga was originally his home), and that while there he did in fact receive treatment at the Newell Sanitarium. However this may be, his accident and trouble were published in the Knoxville newspapers at about the time he left so suddenly to go to Chattanooga, and were brought to the attention of The White Company.

A representative of The White Company, after seeing in the newspapers about the accident and trouble, and while Boyd was in Chattanooga, went to the garage. Bolinger, who was then in charge, declined to tell this representative where Boyd was or how long he would be gone, but did tell him that an attachment had been issued and levied on the garage. It seems this attachment had been sued out by the owner of the car which Boyd was driving at the time of the accident. The representative also received the impression that the institution of other attachment suits by various creditors of Boyd was impending. He saw that the tires had not been put upon the truck and that some of the new parts had not been installed and that these tires and parts were lying around where they could easily be stolen and taken away. So, after calling the manager of The White Company over the telephone, explaining the situation to him and receiving instructions to do so, he had the truck taken back to the place of business of The White Company. He explained to Bolinger that he was taking the truck for safe keeping, and to protect Boyd's investment as well as that of The White Company; and he also told Bolinger to tell Boyd upon his return to Knoxville to come to see them (The White Company) and make arrangements to get his truck.

In addition to this, both the representative and the manager of The White Company testify positively that they did not take possession of the truck for the purpose of selling it, but only for the purpose of protecting it for the benefit of Boyd and The White Company until the return of Boyd to Knoxville.

After Boyd's return to Knoxville, and on March 2, 1925, or possibly a day or two later, this representative saw him and asked him what he wanted to do with reference to the truck, and Boyd told him that he was through with it and had put the matter in the hands of an attorney.

On March 9, 1925, Boyd instituted this suit, and on March 12, 1925, The White Company posted advertisements as required by the statute. On March 24, 1925, The White Company sold the truck for $223.91.

Under these facts and circumstances, we do not think the trial court erred in finding that: ''The White Company for the purpose of safe guarding its security and for no other purpose, took possession of said truck, intending to preserve it until the plaintiff Boyd returned. The plaintiff Boyd did return but he did not indicate until March 2, 1925, that he would not proceed with the transaction and thereupon and within ten days after being so notified The White Company did advertise and sell said truck as required by the conditional sales contract law, and is not liable to the plaintiff in this case.''

The wording of the statute (Shannon's Code, section 3666) is: ''When any personal property is sold upon condition that the title remain in the seller until that part of the consideration remaining unpaid is paid, it shall be the duty of said seller, having regained possession of said property because of the consideration remaining unpaid at maturity, to within ten days after regaining said possession, advertise said property for sale,'' etc.

In this case we think the trial court correctly reached the conclusion on the facts that the seller at the time it took the truck from the garage did not regain posession ''because of the consideration remaining unpaid at maturity.'' And we think he was also correct in holding that the ten-day period for advertising did not begin to run until March 2, 1925, when Boyd (for the first time) informed the seller that he did not intend to complete the purchase and that he had put the matter in the hands of an attorney.

It results that in our opinion none of the errors assigned are well taken and the same are overruled, and there being no error in the judgment of the circuit court, the same will be affirmed. The costs of the appeal will be taxed against A. L. Boyd, as principal, and E. B. Henry and Bern J. Henry, as sureties, on the appeal bond.

Portrum and Snodgrass, JJ., concur.